REID, Judge.
Plaintiff, Lula Bell Lemon, a guest passenger in a vehicle driven by her employer, Mrs. Albia T. Barksdale, involved in a collision with an automobile driven by Murray D. Stafford, sued the insurers of the two drivers for medical expenses and personal injuries sustained when the two vehicles collided. Defendant Houston Fire and Casualty Insurance Company, Mrs. Barksdale’s insurer, filed a third party petition against Connecticut Fire Insurance Company, Murray Stafford’s insurer, praying for a judgment condemning Connecticut Fire to pay one-half of any award rendered against Houston Fire. Connecticut Fire reconvened for the same relief against Plouston Fire.
In a separate suit Houston Fire and Casualty Insurance Company sued Connecticut Fire Insurance Company for damages to its insured’s vehicle, seeking to recover its loss as collision insurer of the Barksdale vehicle. Connecticut Fire reconvened seeking to recover its loss as collision insurer of Mr. Stafford’s vehicle.
The Trial Court awarded judgment in favor of the plaintiff in the amount of $4,-799.21 denying the demands of Houston Fire and Casualty Insurance Company against Connecticut Fire Insurance Company and the reconventional demand of Connecticut Fire Insurance Company against Houston Fire and Casualty Insurance company be denied. The defendants appealed from the judgment awarded the plaintiff and plaintiff answered the appeal asking that the judgment be increased to $10,000.00.
Counsel for Houston Fire and Casualty Insurance Company contends the Trial Court erred (a) in ruling statements made by the plaintiff herself are inadmissible when such statements are recognized as admissions against interest and are exceptions to the hearsay rule, (b) in failing to find that Mrs. Barksdale had a right to assume her right-of-way would be respected, (c) in finding Mrs. Barksdale negligent in view of her right to assume that Stafford would not attempt to enter the intersection in the path of oncoming traffic, even had Murray Stafford stopped at the stop sign, and (d) in assessing damages sustained by plaintiff.
Defendant Connecticut Fire Insurance Company alleges that the District Court erred (a) in failing to find that Mrs. Albia Barksdale did not see what she should have seen and did not take proper steps to avoid the accident, (b) in failing to hold Mrs. Barksdale negligent in her failure to exer *129 cise the last clear chance to avoid the accident, and (c) in assessing excessive damages.
The record shows that on May 5, 1962 at about 3 :30 P.M., Murray Stafford was driving his 1958 DeSoto Sedan in an easterly direction on East Charles Street in the City of Hammond. At the same time Mrs. Barksdale was driving her 1960 Vauxhal in a northerly direction on North Cherry Street. The two vehicles collided at the intersection of North Cherry Street and East Charles Street. The record shows that there is a stop sign at said intersection facing East Charles Street, that North Cherry Street is the favored street, and that Mrs. Barksdale had the right of way. The plaintiff was riding as a guest passenger in the Barksdale vehicle.
Mr. Stafford testified when he approached the stop sign at the corner of East Charles and North Cherry Streets he stopped and let two cars go by which were traveling in a southerly direction. He stated he then looked both ways, saw nothing coming and proceeded to cross the intersection, but while in the intersection he saw a small car approaching approximately half a block away and that the car hit him just before he cleared the intersection. He further testified he could see at least 150 feet down the block, that his view was not obstructed by the two cars going south, and he estimated Mrs. Barksdale’s speed at approximately 25 to 30 miles per hour.
Mrs. Barksdale testified she was driving north on North Cherry Street, had stopped at a red light on East Thomas Street, one block before East Charles Street, and at the time of the collision she was driving approximately 15 to 20 miles an hour. She further testified while she was approximately a quarter of a block from the intersection she saw the Stafford vehicle approximately half a block from the intersection and expecting him to stop at the stop sign she proceeded into the intersection. She said Stafford did not stop at the stop sign and she did not realize this until they were in the intersection and collided. She estimated Stafford’s speed at approximately 30 to 35 miles an hour.
Lula Bell Lemon testified she was riding on the right hand side of the Barksdale vehicle at the time of the collision. On direct examination she testified she could remember nothing that happened after the accident for a period of 3 or 4 days, during which time she was in the hospital. She testified on cross examination that she did not notice Mr. Stafford’s car until the two automobiles collided, but on further cross examination she did admit she saw the Stafford car just when it got into the intersection. She further testified on cross examination by counsel for Connecticut Fire that Mrs. Barksdale swerved her automobile in an attempt to avoid the collision. She stated Mrs. Barksdale was going at a normal rate of speed, that she was driving carefully and was watching the road. On cross examination by counsel for Houston Fire she stated Mrs. Barksdale “was talking with her hands” but was looking straight ahead. She said she did not at any time remember stating that Mr. Stafford had run a stop sign, although Mr. Barksdale, husband of the driver, testified that after the accident Lula Bell returned to their dry cleaning establishment and told him a man ran a stop sign and when he asked her who it was she indicated Mr. Stafford.
The Trial Judge held both drivers negligent. There is no question Mr. Stafford was guilty of negligence in failing to perform the duties required of the driver approaching an intersection from a less favored street, that is, bringing his car to a complete stop and not entering the intersection unless it is safe to do so. It is clear that Mr. Stafford either failed to stop at the intersection as he stated he did, or he did not see what he should have seen, or he failed to heed what he saw. An examination of Mr. Stafford’s testimony clearly shows that if the accident occurred as he testified, the latter statement would have been the case. According to his own testi *130 mony lie stopped at the intersection, the intersection was clear, he could see half way down the block, and when he had proceeded into the intersection he saw the Barksdale car for the first time approximately 150 feet away moving approximately 25 to 30 miles an hour, and yet he would have the Court believe that under these circumstances he was unable to timely clear the intersection. He testified he was traveling between 15 and 20 miles per hour and she was traveling between 25 and 30 miles an hour. She had to travel 150 feet while he traveled less than half the width of the intersection.
 There is no evidence in the record to indicate Mrs. Barksdale was traveling at an excessive rate of speed. It should be pointed out that she had just pulled away from an intersection one block to the south where she had come to a complete stop for a red light. Even if Mrs. Barksdale had been traveling at a slightly excessive rate of speed, Louisiana courts have held that an excessive speed that had no causal connection with the accident in question does not constitute contributory negligence. Bergeron v. Hetherwick, La.App., 140 So.2d 440.
If Mrs. Barksdale’s version of the accident is assumed to be correct, that is, when she first saw Mr. Stafford she was about a quarter of a block from the intersection and he was approximately half a block away and traveling at a rate of speed in excess of hers, then the only way the accident could have happened was for Mr. Stafford to have failed to stop at the stop sign. Regardless of whose version of the accident was true, it was Mr. Stafford’s negligence which was the proximate cause of the accident.
In the case of Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, the Supreme Court laid down the principles which have been consistently followed in cases such as this.
“The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law.”
In the instant case it was not only Stafford’s duty to stop but it was also his duty not to enter the intersection until he could do so without impeding right of way traffic. See Walker v. State Farm Automobile Ins. Co., La.App., 137 So.2d 685, quoting Arline v. Alexandria, La.App., 2 So.2d 710.
The Trial Court awarded plaintiff the sum of $4,799.21, of which $506.71 was for medical expenses and $292.50 for loss of earnings for 13 weeks at $22.50 per week. Damages for medical expenses and loss of earnings are unchallenged by defendants, although plaintiff in her answer to the appeal contends the award for loss of earnings should be increased to $900.00.
The Trial Court awarded plaintiff $4000.00 for her physical pain and suffering. Plaintiff was taken to the Seventh Ward Hospital where she remained for a period of three days. She was then treated by Dr. Thames who testified he treated her initially from May 8, 1962 until August 10, 1962, during which time she made 44 *131 visits receiving treatment consisting of diathermy, exercise to her arm and shoulder, and heat treatments to her neck. He also prescribed muscle relaxant drugs, codeine and aspirin for pain. Dr. Thames diagnosed her injuries as consisting of general body contusions, severe strain to the neck, arms, back and abdomen, and nervous shock. She was discharged on August 10, 1962 and told she could return to work.
On November 13, 1962 plaintiff was examined on behalf of Connecticut Fire Insurance Company by Dr. James L. LeNoir, an orthopedic surgeon of New Orleans, who stated in his deposition that at the time of the examination plaintiff was having difficulty with her neck and lower back. Dr. LeNoir testified “her neck examination was essentially negative” but “she did have a single finding of abnormality, approximately a 25% restriction of motion of her neck in all phases, although it is my belief this was voluntary rather than organic.” Dr. LeNoir testified in his opinion “this patient had a low-back strain and that it was symptomatic, that she did have a complaint there, which was a legitimate complaint and that it had followed injury or that it could be considered post-traumatic.” Fie said his second diagnosis “was that the patient had a lumbar curvature of the spine, to the right in the lumbar area that was not traumatic but the existence of which was aggravating the low-back strain of traumatic type” and he felt this scoliosis or curvature of the spine was secondary to the short lower extremity. He testified it was his opinion that the patient’s low-back pain symptom evidently was of low grade and although he felt pain was present, he did not believe she was having pain to the degree to prevent her from working as a maid as she stated was her occupation. He said she might have to work with some discomfort and he recommended additional treatment consisting of a heel lift on her right shoe and a lumbosacral corset to bring her back strain problem under control.
Thereafter plaintiff was treated by Dr. Thames again — during the period January 8 to March 1, 1963, for a total of 23 visits. He testified his treatment consisted of prescribing a sacro-illiac belt and a one inch lift in her shoe and further diathermy treatments. He discharged her on the first of March as able to return to light work.
As to the loss of earnings, the record shows plaintiff was employed by Mrs. Barksdale at a rate of $20.00 per week, but that Mrs. Barksdale intended raising her salary to $22.50 a week, which fact was confirmed by Mr. Barksdale. In awarding plaintiff 13 weeks earnings the Trial Court must have concluded she was able to return to work after being discharged by Dr. Thames on August 10. Even though the record shows plaintiff still suffered some discomfort from her injury, it cannot be said that this finding of the Trial Court is incorrect.
Regarding the award of $4000.00 for pain and suffering, the defendants have cited cases with similar injuries wherein the awards were lower and plaintiff has cited cases where awards were higher. Although this award does seem somewhat excessive, in the recent case of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, the Louisiana Supreme Court stated the function of the appellate court in questions of quantum as follows:
“In a case decided just this year by the Third Circuit Court of Appeal, White v. Robbins, La.App., 153 So.2d 165, that court took a realistic and proper view of the value and the weight to be given to the doctrine of uniformity of awards, saying:
“ ‘It is true that awards made should not be all out of proportion with previous awards made for somewhat similar injuries. * * *’
“ ‘However, in using the awards made in previous cases as a guide to evaluate the award of damages for the particular injuries involved in a subsequent case, the reviewing court must take into consideration *132 that each case is decided on the basis of its own peculiar factual circumstances, which may vary greatly from case to case even involving somewhat similar injuries. * * * Since an award of damages for personal injuries is of necessity somewhat arbitrary and also must vary greatly with the facts and circumstances of each case, the trial court is entrusted with large discretion in making such awards, which discretion ordinarily should not be disturbed on appellate review. * * *
“ ‘Thus, on appellate review of a trial court award for pain and suffering, the question is not to calculate with any mathematical exactitude any fixed amount as alone proper under the circumstances, nor to attempt to reconcile widely variable and in fact irreconcilable past awards for injuries which in the abbreviated appellate discussion of them seem somewhat similar. The function of the reviewing court is simply to determine whether the present trial court award is manifestly excessive or manifestly insufficient under all the circumstances of the present case.’ ”
It cannot be said that the award in the present case is manifestly excessive or manifestly insufficient and, therefore, under the holding of the Gaspart case neither the plaintiff nor the defendants would be entitled to a change in the quantum.
Houston Fire and Casualty Insurance Company raised an objection to the refusal of the Trial Judge to admit two statements made by Lula Bell Lemon to adjusters, one of which was signed and the other unsigned. In both cases adjusters were placed on the stand and after they identified the statements the Trial Judge refused to permit the statements to be introduced. In addition, the Trial Judge refused to allow Houston Fire to take an exception to his ruling and to make an offering of proof in order that the appellate Court could see the statements. Counsel for defendant contends that under LSA-C.C.P. Article 1636, he was entitled to make said offering “of proof. The said article reads:
“When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality. * * * ”
In view of our finding that Houston Fire is not liable in this case, it is not necessary to go into the question of the admissibility of the statements. However, we do feel it should be pointed out that under said Article 1636 the defendant should have been permitted to make his offering of proof and permitted to attach the statement thereto in order that the same could have been before this Court in the event this Court should have held the statements admissible.
In the judgment in this suit is also a judgment rendered in Houston Fire and Casualty Insurance Company v. Connecticut Fire Insurance Company. The decree in said suit should not be in this judgment as it is an entirely separate suit and there should have been a separate judgment drawn and signed in said suit, and if an appeal had been taken same could have been taken up jointly with this suit. Therefore, this Court will not consider in this matter the judgment rendered in the suit of Houston Fire and Casualty Insurance Company v. Connecticut Fire Insurance Company.
For the foregoing reasons, it is the opinion of this Court that Houston Fire and Casualty Insurance Company is not liable in this case and the judgment of the Trial Court insofar as that defendant is con *133 cerned is reversed and suit dismissed as to that defendant. In all other respects the decision of the Trial Court is affirmed.
Reversed in part and affirmed in part.