501 So.2d 788 (1986)
STATE of Louisiana
v.
Lavelle HAILES.
No. KA-1347.
Court of Appeal of Louisiana, Fourth Circuit.
December 12, 1986.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Susan Scott Hunt, Asst. Dist. Atty., Michael E. McMahon, Asst. Dist. Atty., New Orleans, for appellee.
Martin E. Regan, Jr., New Orleans, for appellant.
Before REDMANN, C.J., and WARD and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, Lavell Hailes, was charged by grand jury indictment with three counts of aggravated rape, one count of attempted murder and four counts of armed robbery. A jury found him guilty as charged. The court sentenced him to life without benefit of parole, probation or suspension of sentence on each count of aggravated rape. He was sentenced to fifty years on each armed robbery count and fifty years for the attempted murder charge, all of the sentences to run concurrently.
Defendant's motion for a new trial was denied. He subsequently filed a Supplemental Motion for a New Trial. On appeal *789 this court remanded the case for a hearing on defendant's supplemental motion. The trial court heard and denied the motion. Defendant appeals.
On February 20, 1982, the four victims were playing cards in an apartment when an armed black male entered the premises. The assailant ordered the three women to disrobe and lie on the floor. He robbed and raped the women and also robbed the date of one of the women. The perpetrator then indicated that he was going to rape a minor present when one victim interceded. Defendant shot her in the eye and fled.
During trial the state offered into evidence a taped statement by the defendant and a transcript of the statement. The tape was played in open court. It is the statement which is the basis of defendant's assignment of error.
On the tape the defendant admitted that he had gone to 1610 S. White Street on the date of the incident. He alleged that the purpose of the visit was to have his brother-in-law prepare his income taxes. He stated that when he looked into the apartment in which the crimes later occurred, he saw people gambling and then left. He stated that he did not enter the apartment where the card game was in progress because he recognized one of the players as a woman with whom he had previously had a dispute. He denied committing the crimes for which he was charged. Subsequent to trial a hearing was held on the Supplemental Motion for a New Trial. At the hearing two jurors testified that during the deliberations the jury requested all of the evidence submitted during the trial and the request was granted. Included in the evidence given to the jury was the tape of defendant's statement and the transcript.
The trial judge admitted that he allowed the evidence into the jury room during deliberations at the jury's request. Both the prosecution and the defense deny knowledge of the request and the subsequent granting thereof. Further, the record contains no minute entry of the request.
On appeal to this court the defendant claims that the trial judge erred in allowing the jury to have defendant's statement during deliberations. Recognizing the gravity of the charges as well as the debilitating injuries to the victims, this court has been required to carefully weigh the arguments before it, but we do not find, as suggested by the prosecution, that the submission of the statement to the jury was harmless error.
Article 793 of the Louisiana Code of Criminal Procedure states:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have it sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
This court recognizes a jury's right to inspect physical evidence in reaching a decision; however, written evidence cannot be inspected to assess its verbal contents. State v. Perkins, 423 So.2d 1103 (La.1982). The physical examination of a document should be limited to issues which do not require the examination of the verbal contents of the document. Without such a limitation there is a possibility that prejudice to the defendant would result if the jury were allowed to view written evidence directly linking the accused to the crime.
In a case such as the one before the court there is a fine line between an inculpatory and an exculpatory statement. The prosecution proposes that the statement was exculpatory in that defendant denies any involvement in the crimes at 1610 S. White Street. Our examination of the statement reveals that although the statement was not a confession, it is inculpatory in that it places defendant at the scene, therefore, the danger of prejudice is present. Further, it is clear that the jury did not need to review the statement for any reason other than to review its contents *790 since it is an unsigned transcript of a taped oral statement.
For the foregoing reasons this court is bound to find that the sending of the statement to the jury during deliberation is reversible error. Therefore, we reverse defendant's conviction and order a new trial.
REVERSED
REDMANN, C.J., dissenting with reasons.
REDMANN, Chief Judge, dissenting.
The tape recording to which the jury had access was not a recording of words only but of non-verbal sounds. These sounds were argued by the defense to be physical evidence of physical facts that the jury may well have wished to evaluate in arriving at its verdict. Defense counsel (who heard the tape for the first time at trial) had major portions of the tape replayed to the jury during trial so that the jury could examine not the words but other sounds on the tape (that he called clicks, thumps, thuds and sniffles; "I would ask the jury at this time not to read along but to listen,... concentrate on the noises"). Defense counsel's questioning during trial, in the presence of the jury, suggested or argued that the tape showed voice stress and changes in tone of voice by both the officer and defendant; defendant's crying; and the interrogating officer's hitting and slapping defendant, cocking a gun, and rotating the cylinder of the gun; and that "after the thumps and the stress in [the officer's] voice things become inaudible [for] the first time on this transcript."
Fairness to the defendant would suggest that the jury be allowed to rehear those noises in the jury room, to be able to evaluate them in reaching a verdict (perhaps especially if the tape includes an inculpatory statement). A tape of such noises is an object of which a "physical examination," that is, a listening to its non-verbal sounds rather than its words, may be required to enable the jury to arrive at a verdict. C.Cr.P. 793 therefore does not prohibit letting the jury have a tape recording of sounds asserted by the defense to show hitting and implied threats with a gun by an interrogating police officer.