537 So.2d 1262 (1989)
STATE of Louisiana
v.
Reginald ADAMS.
No. KA-8388.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1989.
*1263 Harry F. Connick, Dist. Atty., Sandra Pettle, Asst. Dist. Atty., New Orleans, for State.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before SCHOTT, C.J., and WARD and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant Reginald Adams appeals his conviction for the first-degree murder of Kathy Ulfers. Because of fatal errors committed by the trial judge, we must reverse and remand for retrial.
Mrs. Ulfers, the wife of New Orleans Police Officer Ronald Ulfers, died October 7, 1979 as a result of seven gunshot wounds suffered as she entered her home at 3973 Downman Road. Many areas of the house had been ransacked and a number of items were missing, so police assumed the murder occurred when Mrs. Ulfers surprised burglars. Two homicide detectives worked full-time on the case for several months, but no real leads were uncovered until September 19-20, 1980, almost a year after the murder, when the defendant confessed to the crime in two detailed tape-recorded conversations between him and police.
Following the confessions, the defendant and two other men whom he had implicated in the confession were arrested and charged with first-degree murder while in the perpetration of an aggravated burglary. The two co-defendants were nolle prossed by the district attorney's office prior to trial. At trial, Adams recanted his confessions, claiming the policemen had induced the inculpatory statements by giving him drugs and alcohol and by promising to let him go if he implicated the other men. He said he learned of the details of the crime before the tape recorder was turned on from the detective who was questioning him. He denied killing the victim or ever being in her house. A twelve-member jury found the defendant guilty as charged and he was sentenced to life imprisonment *1264 without benefit of parole, probation or suspension of sentence.
Refusal to Allow Proffered Evidence
By his second assignment of error, the defendant complains that the trial judge improperly disallowed testimony that another person, Anthony Calcagno, admitted involvement in the crime for which he was charged.
Calcagno was one of the two men implicated by Adams in his taped confessions. Adams originally stated that Calcagno hired him and another person, John Dupart, to "hurt a policewoman." Later in his original confession, Adams changed his story and said simply that Calcagno set up the house where the murder occurred for a burglary and that he (Adams) shot Mrs. Ulfers in panic when she came home unexpectedly.
In this case, the trial judge stated on the record that Calcagno had reportedly made statements outside the courtroom concerning his own guilt in the matter and said that he wished to testify. The court appointed an attorney to represent Calcagno and ordered a psychiatric examination. Subsequently, when called by the defense, Calcagno asserted his Fifth Amendment privilege against self-incrimination and refused to testify. The defense then sought to present the testimony of persons who had heard Calcagno make the alleged statements, but the trial judge ruled that testimony inadmissible. The trial judge also disallowed a proffer of the testimony, saying it was "rank hearsay."
The Louisiana Supreme Court has recognized an exception to the hearsay rule for statements made against the declarant's own penal interest. State v. Gilmore, 332 So.2d 789, 792 (La.1976). Thirdparty testimony concerning such statements is allowed when the declarant himself is unavailable to testify. State v. Hudson, 361 So.2d 858, 860 (La.1978). This requirement is met when, as here, the declarant has refused to incriminate himself. Id. In order for such statements to be admissible, however, there must be indications that the statements are truly reliable. State v. Rushing, 464 So.2d 268, 274 (La. 1985), cert. denied 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986). In Rushing, the court stated as follows:
The source of credibility for the out-of-court statement against the defendant's penal interest is the assumption that a person would not normally admit to the commission of a crime if not true. Unless the statement in question is truly against [the declarant's] penal interest, it is [sic] reliability is suspect.
Id. In Rushing, the court disallowed an "ambiguous" statement because it was not truly incriminatory to the declarant and because it was not truly exculpatory to the defendant. Id.
Although previously there was no statutory or codal authority for making offers of proof concerning evidence which has been ruled inadmissible in criminal cases, the new Louisiana Code of Evidence contains a provision allowing attorneys to make proffers. LSA-C.E. art. 103, pertaining to Rulings on Evidence, states, in pertinent part, as follows:

A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . . .

(2) Ruling excluding evidence. When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.
Although the above provision does not refer specifically to "proffers" or "offers of proof," the official comments state that the article is generally designed to follow Federal Rule of Evidence 103(a), which does state specifically that the substance of excluded evidence must be made known to the court by offer or be apparent from the context of the question.
In civil cases, La.C.C.P. art. 1636 requires that trial judges do one of two things when a party wishes to make a proffer: (1) allow a complete record of the proffered testimony or (2) allow presentation of a statement describing what the party expects to prove by the proffered *1265 evidence. A refusal to permit counsel to make a proffer with respect to testimony of witnesses or any other evidence has been held improper. Liberty Mut. Ins. Co. v. Bryant, 191 So.2d 747 (La.App. 2d Cir. 1966), writ ref'd 250 La. 16, 193 So.2d 528 (1967); Lemon v. Houston Fire & Cas. Ins. Co., 162 So.2d 127, 132 (La.App. 1st Cir.1964); Hopkins v. Dept. of Highways, 350 So.2d 1271 (La.App. 3d Cir.1977).
The purpose of an offer of proof is to create a record of the excluded evidence so that the reviewing court will know what the evidence was and will thus be able to determine if the exclusion was improper, and, if so, whether the improper exclusion constituted reversible error.
Under the new Louisiana Code of Evidence provision quoted above, in criminal cases, as well as civil cases, a party now has a legal right, when evidence has been excluded, to make an offer of proof of what counsel expects to prove, outside the presence of the jury. Any other interpretation of LSA-C.E. art. 103 would rob the provision of its effectiveness since a party's right to predicate an assignment of error on a ruling excluding evidence is dependent on a proffer. Since LSA-C.E. art. 103 is a procedural provision, it applies retroactively to this case. Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188, 1192 (La.1987); Anthony v. New Orleans Public Service, Inc., 480 So.2d 440, 441 (La.App. 4th Cir.1985).
Of course, in order to meet the requirements of LSA-C.E. art. 103(A), the defendant must also show that the judge's ruling affected his "substantial rights." A defendant in a criminal case has a legal right to introduce reliable evidence that a third party is guilty of the crime for which he is charged. In the instant case, we are unable to assess whether the statements allegedly made by Calcagno were truly incriminatory to Calcagno and truly exculpatory to Adams because the trial court denied the defendant's proffer of testimony. As the record stands, we are unable to assess the reliability of the statements and we are therefore unable to determine whether the trial judge properly disallowed the statements.
For those reasons, on remand, the trial judge is ordered to make a determination of whether Calcagno is competent to testify. If he is competent, possesses information about the crime and is willing to testify, he may be called as a witness. If he invokes his Fifth Amendment privilege and refuses to testify, the trial judge should make a determination of the reliability of Calcagno's alleged statements. If the statements contain sufficient indicia of reliability, the defendant may call other witnesses who heard Calcagno make the statements against his own penal interest. In the event the trial court concludes the statements are unreliable, counsel must be allowed to make an offer of proof.
Allowing Taking of Transcripts into Jury Room
By his third assignment of error, the defendant complains that the trial judge erred in allowing the transcripts of his taped confessions to be taken into the jury room during deliberations. The defense motion for mistrial based on this error was denied and the record indicates that the court never ruled on the defense's motion for new trial based on this error. The failure to rule on the motion for new trial is an error patent, but our decision to remand makes sending the case back for a ruling on the motion unnecessary.
La.C.Cr.P. art. 793 specifically delineates the types of evidence which may be taken into the jury deliberation room. It states as follows:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
Louisiana jurisprudence interpreting the above provision recognizes the right of the jury to inspect physical evidence, but restricts *1266 the jury's use of written evidence during jury deliberations to inspections which do not require the examination of the verbal contents of the document. State v. Perkins, 423 So.2d 1103, 1109-10 (La.1982). This court has previously stated as follows:
The clear rule derived from this article is that the jury is not to take written evidence into the jury room, or receive it there, except for the sole purpose of conducting a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. For example, a jury can only examine written evidence to ascertain or compare the signature, or to see or feel it with regard to its actual existence. Our courts have consistently have [sic] held that reversible error results when written evidence is given to the jury for the purpose of permitting it access to the verbal contents of the document.
State v. Buras, 459 So.2d 756 (La.App. 4th Cir.1984). (Citations omitted.)
La.C.Cr.P. art. 793 is a "policy choice" designed to prevent jurors from giving "undue weight to the limited portion of the verbal testimony ... brought into the room with them." State v. Freetime, 303 So.2d 487, 489 (La.1974). Therefore, both the Supreme Court and this court have held that allowing the jury to read the defendant's confession after retiring to deliberate is reversible error. Id.; Perkins, supra; State v. Hailes, 501 So.2d 788 (La.App. 4th Cir.1986); State v. Buras, supra.
Allowing Calcagno to Assert a "Blanket" Privilege
By his first assignment of error, the defendant claims the trial judge should not have allowed Calcagno to assert a "blanket" Fifth Amendment privilege, but should have required that he assert "the Fifth" in response to each successive question which might have incriminated him. We find that this assignment has no merit. The Louisiana Supreme Court has held that where a witness has "reasonable grounds to assert the privilege as to the entire area of expected questioning" he is not required to "take the stand and risk making an injurious disclosure through any answer or explanation of a refusal to answer." State v. Brown, 514 So.2d 99, 111 (La.1987), cert. denied Brown v. Louisiana,  U.S., 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). The defendant attempts to distinguish the instant case from the cases discussed in Brown on the basis of the fact that the prospective witnesses in those cases were co-defendants and the prospective witness in the instant case was not. However, we find that is a distinction without a difference since Calcagno was originally charged with the crime along with Adams and because the district attorney's office may choose to recharge Calcagno at any time. Therefore, the reasoning in Brown applies to the instant case and the trial judge properly allowed Calcagno to assert a "blanket" Fifth Amendment privilege. See State v. Edwards, 419 So.2d 881 (La.1982) and State v. Roebuck, 532 So.2d 812 (La.App. 4th Cir.1988).
Conclusion
Because the trial judge improperly disallowed defense counsel to make a proffer of evidence that a third party confessed to committing the crime for which the defendant was charged and because she allowed copies of the transcripts of the defendant's confession to be taken into the jury deliberation room, the defendant's conviction is reversed and the case is remanded for retrial.
REVERSED AND REMANDED.
SCHOTT, Chief Judge, concurring:
I agree with Judge Plotkin's treatment of defendant's third assignment of error. The trial court committed reversible error in allowing the jury to take the transcripts of defendant's confessions into the jury room during deliberations. Consequently, I concur in the reversal of the conviction and the remand for a retrial.