J^BROWN, J.
Defendant, Matthew Aaron Nightengale, was convicted of the second degree murder of Jamard Powell (a/k/a Jamard Johnson), a violation of La.R.S. 14:30.1. He was sentenced to life imprisonment without benefit. Defendant appeals his conviction and *822 sentence. Finding no error, however, we affirm.

Facts

On December 3, 1999, after drinking alcohol and smoking marijuana for most of the day, defendant and his girlfriend, Gretchen Hamilton, went in search of more dope. Gretchen testified that as she was driving her car “around” Lake Providence, Louisiana, she heard someone yell something at her. She stopped and that someone came up to the ear. Gretchen related that she and defendant were looking for some marijuana. The man referred Gretchen and defendant to the victim, who got into Gretchen’s car. The victim then stated that he had to use the bathroom.
Gretchen stated that, after she drove past a crowded gas station, the victim told her to go to the levee. When the trio got to the levee, the victim gave some marijuana to defendant, who then handed it to Gretchen. The victim stated that the dope was worth $30, but that he would sell it to them for $20. The victim got out of the car to use the bathroom. Defendant followed the victim with a pistol in his hand. The victim remarked to defendant, “you stay strapped, hah dog?”
Defendant got back into the car. Gretchen stated that at that point, she got out of the vehicle to get her jacket from the trunk. While Gretchen was behind the car, defendant got out of the vehicle with a shotgun and shot |2over the car, at the victim. Defendant stood over the victim, asking him, “where’s your pistol at?” The victim died as the result of shotgun wounds. Defendant and Gretchen left the levee in her car and went to defendant’s house. Defendant hid the shotgun in his father’s truck. The two then went to the home of Gretchen’s grandparents where they stayed.
Defendant was charged with second degree murder. He did not testify at trial although his videotaped confession was admitted into evidence and played for the jury. The jury found defendant guilty as charged. This appeal ensued.

Discussion

Denial of Motion to Suppress

According to defendant, the trial court erred in denying his motion to suppress the statement he gave to Detective Neal Harwell of the Louisiana State Police. Defendant contends that the statement was inadmissible because it was induced by promises. Specifically, defendant alleges that Det. Harwell promised that he would speak to the district attorney if defendant were truthful and that defendant would get a lighter sentence; defendant asserts that Det. Harwell told him that he knew it was an accident and he “could almost promise [him] five years.”
Before a confession can be introduced into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. art. 703(D); State v. Roddy, 33,112 (La.App.2d Cir.04/07/00), 756 So.2d 1272, writ denied, 00-1427 (La.05/11/01), 791 So.2d 1288. The lastate must also establish that a defendant who makes a statement during a custodial interrogation was first advised of his Miranda rights. Id.; State v. Walker, 28,577 (La.App.2d Cir.10/04/96), 681 So.2d 1023.
In State v. Jackson, 381 So.2d 485 (La.1980), and State v. Morvant, 384 So.2d 765 (La.1980), the Louisiana Supreme Court stated the principles under which the admissibility of a confession must be judged. The court first pointed out that, as a matter of federal constitutional law, any confession obtained by any direct or implied *823 promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). The court in State v. Jackson, supra at 487, then stated that:
In Louisiana, the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces, but whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451.
The admissibility of a confession is a question for the trial court. State v. Roddy, supra. When determining admissibility, the trial court’s conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless those conclusions are clearly not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Roddy, supra. Great weight is placed upon the trial court’s factual determinations because of its opportunity to observe witnesses and assess credibility. Id.; State v. Crews, 28,153 (La.App.2d Cir.05/08/96), 674 So.2d 1082.
Quoting State v. Matthews, 26,550 (La.App.2d Cir.12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La.06/16/95), 655 So.2d 341, this court, in State v. Roddy, supra at 1277, stated:
A confession obtained by direct or implied promises, however slight, or by the exertion of any improper influence must be considered involuntary and inadmissible. However, a mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will “do what he can” or “things will go easier,” does not negate the voluntary nature of the confession. Further, informing a defendant that the district attorney will be advised of any cooperation is insufficient to overcome the free and voluntary nature of a confession. (Citations omitted.)
See also State v. Thomas, 30,490 (La.App.2d Cir.04/08/98), 711 So.2d 808, writ denied, 99-0331 (La.07/02/99), 747 So.2d 8; State v. Taylor, 30,310 (La.App.2d Cir.02/25/98), 709 So.2d 883.
In the instant case, Det. Harwell testified that he made no promises to defendant, but that he did tell defendant that he would speak to the district attorney if defendant told the complete truth. Defendant testified that Det. Harwell said that he could almost promise no more than five years and that he was going to do everything he could do because “he knew it was an accident.” Det. Harwell specifically denied making these statements. Defendant’s father, Don Nightengale, testified that, after defendant had confessed, Det. Harwell told him that he would do everything he could do to help defendant get a lighter sentence. Det. Harwell again specifically denied making this statement.
The trial court found the testimony of Det. Harwell to be more credible than the testimony of defendant and his father. The court further found that Det. Har-well’s statement that he would speak to the district |Rattorney was permissible. These factual conclusions are entitled to great weight. The evidence supports the trial court’s finding that there was neither promise nor representation to defendant that his cooperation would result in a specific benefit from the district attorney’s office, such as a lesser charge or plea bargain agreement. As such, Det. Har-well’s remark in no way negated the voluntary nature of defendant’s confession. This assignment of error is without merit.

*824
State’s Refusal to Disclose Plea Bargain with Gretchen Hamilton

Defendant contends that the State and Gretchen entered into a plea bargain and that the State’s failure to disclose the terms of this agreement constitutes error. According to the State, however, there was no plea agreement; quite simply, if Gretchen testified truthfully, that would be taken into consideration.
Due process requires the disclosure of evidence that is both favorable to the accused and material either to guilt or to punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Bailey, 367 So.2d 368 (La.1979). There is no distinction between exculpatory evidence and impeachment evidence and in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court extended the Brady rule to cases in which any evidence adversely affecting the credibility of government witnesses is withheld from the defense.
The prosecution’s duty to disclose exculpatory evidence applies whether there has been a specific or a general request for discovery as well |fias when there has been no request at all. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Where such information is not disclosed, and it is material in the sense that its suppression undermines confidence in the outcome of the trial, then constitutional error occurs and the conviction must be reversed. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Giglio v. United States, supra. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. U.S. v. Bagley, supra.
Gretchen stated that her agreement with the state was that if she testified truthfully, she would be treated fairly. She further testified that her attorney reviewed the evidence and determined that the worst she could be charged with was as an accessory after the fact, which carries a five year sentence. Gretchen also stated that no one promised her anything.
In its response to discovery, the state revealed its arrangement with Gretchen to defendant. The only thing that the state agreed to was that if Gretchen testified truthfully, she would be treated fairly. Accordingly, this assignment of error lacks merit.

State’s Refusal to Furnish Gretchen’s Statements to Defendant

Defendant next argues that Gretchen’s statements should have been furnished to him because she was a co-defendant. He further contends that the statements may have contained exculpatory material. The state, however, argues that Gretchen was not a co-defendant because she was |7never charged with a crime. The state further asserts that it is not required to furnish defendant with statements of witnesses.
Confessions and inculpatory statements of co-defendants, upon motion of the defendant, must be produced by the state. La.C.Cr.P. art. 722. The discovery of statements given by witnesses to the district attorney, however, is not permitted. La.C.Cr.P. art. 723.
In State v. Kimble, 375 So.2d 924 (La.1979), the defendant moved for discovery of statements made by Miller, a co-participant in the offense who was never charged but with whom defendant had been incarcerated in a Mississippi county jail. The court found that the unindicted co-participant was not a co-defendant for the purposes of discovery. See also State v. *825 Fleming, 574 So.2d 486 (La.App. 4th Cir. 1991), writ denied, 592 So.2d 1313 (La.1992).
In this case, Gretchen and defendant were both arrested for first degree murder. Following an investigation and considering defendant’s confession, however, the state indicted defendant with murder but not Gretchen.[1] Therefore, Gretchen was not a co-defendant and her statements were not discoverable pursuant to La. C.Cr.P. art. 722.
Defendant further argues that the statements may have contained exculpatory material. After conducting an in camera inspection, the trial court found that Gretchen’s statements contained no exculpatory material. A review of her statements shows that there are minor inconsistencies and |Romissions, such as whether she was inside or outside of the car when defendant shot the victim; whether she and defendant used drugs and/or drank alcohol on the night of the shooting; and whether the victim handed the marijuana to Gretchen or to defendant. Also, in some prior statements, Gretchen did not tell the officers about an incident occurring earlier the night of the shooting when defendant got out of the vehicle with a shotgun after Gretchen’s purse was stolen. Gretchen further omitted that she saw defendant with a pistol earlier the same date and that defendant showed the victim the pistol before he later shot him with the shotgun.
We do not consider minor discrepancies to be exculpatory material; however, even if they were so considered, this does not warrant reversal of defendant’s conviction. Reversal is only applicable if the evidence created a “reasonable doubt that did not otherwise exist.” See State v. Davenport, 422 So.2d 1150 (La.1982); State v. Sylvester, 388 So.2d 1155 (La.1980); State v. Robertson, 511 So.2d 1237 (La.App. 2d Cir.1987), writ denied, 516 So.2d 366 (La.1988). Given defendant’s confession and Gretchen’s testimony (uncontradicted in her statements) that defendant shot the victim with no apparent justification or explanation, Gretchen’s statements, which might be marginally relevant for impeachment purposes, do not create reasonable doubt that did not otherwise exist.
We find no reversible error in the trial court’s denial of defendant’s request that the state disclose Gretchen’s statements. Accordingly, this assignment of error is without merit..

19Trial Court’s Order Requiring Defendant to Produce Letters Written to Him, by Gretchen

Defendant argues that he should not have been required to produce letters written by Gretchen to him while he was incarcerated. The trial court ordered defendant to allow Gretchen’s attorney to view the letters if defendant intended to use them at trial. Gretehen’s attorney acknowledged that, if asked, he would disclose the content of the letters to the district attorney.
The state has failed to cite, nor have we found, any legal justification for the trial court’s action. Thus, it appears that the trial court may have erred in ordering the disclosure of the letters. However, in case of a discovery violation, the error is not reversible when defendant’s case is not prejudiced. State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996). Defendant has not shown how he was prejudiced by *826 his having to disclose the letters. We have examined the correspondence and find that, even if the trial court erred in ordering their disclosure, such an error would be harmless. This assignment of error is without merit.

Admission of Ballistics Reports into Evidence

Defendant argues that he was prejudiced by the trial court’s failure to grant him a continuance to allow his expert to examine a ballistics report given to defendant on the third day of trial just before the state’s ballistics expert testified. According to the state, the report was delivered to the state and defendant at the same time. The state further points out that defendant could have inspected the evidence and conducted his own tests prior to trial.
_[iflDefendant has the right, upon motion, to inspect and copy reports of scientific tests in the possession of the state. La.C.Cr.P. art. 719; State v. Small, 29,137 (La.App.2d Cir.04/02/97), 693 So.2d 180. The state is not required to disclose information it does not possess. State v. Williams, 448 So.2d 659 (La.1984); State v. Small, supra; State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
Patrick Lane was recognized by the court as an expert in forensic science which includes ballistics. Lane testified that he produced three reports, the last of which was completed the day before his testimony at trial. Lane noted that copies of the report were given to both the prosecutor and defendant that morning. The report contained the results of test patterns to determine the distances from which the gunshots were fired.
Inasmuch as defendant has not demonstrated how he was prejudiced by the late completion of the ballistics tests and the delivery of the report containing the results of the tests, as well as the use at trial of the results, we find no error on the part of the trial court. See State v. Landrum, 35,053 (La.App.2d Cir.09/26/01), 796 So.2d 94. Furthermore, we note, as did the state, that defendant could have conducted his own ballistics tests. This assignment of error is without merit.

Jury’s Use and Retention of Copies of Transcribed Statement

Defendant asserts that the trial court erred in allowing the jury to read copies of the transcribed statement during the video playback of defendant’s confession. According to defendant, this violated La.R.S. 15:450 because the jury was unable to watch the videotape and read the transcript at the Insame time. Defendant further argues that the trial court erred in allowing the jurors to keep the transcripts through a recess and part of the testimony of another witness.
The trial court allowed the jury, for their convenience, to read copies of the transcript of defendant’s statement while a videotape of the confession was played during the testimony of Det. Harwell, the officer who took the statement. The court explained to the jury that the videotape was the best evidence of the confession. After the video was played, the direct examination of Det. Harwell continued. The court then recessed for ten minutes. During the testimony of the state’s next witness, Patrick Lane, the court took a recess for lunch. Upon the resumption of trial, defendant moved for a mistrial because some of the jurors were seen with transcripts of defendant’s statement during the forensic expert’s testimony. Apparently, some of the copies were not promptly collected from the jurors.
*827 It is well settled that use of a transcript of a tape recording for the jury’s convenience does not violate the best evidence rule. State v. Burdgess, 434 So.2d 1062 (La.1983); State v. Matthews, 26,550 (La.App.2d Cir.12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La.06/16/95), 655 So.2d 341. Defendant, however, also contends that the use of the transcripts violated his right to have his entire statement provided to the jury.
In State v. Caldwell, 28,514 (La.App.2d Cir.08/21/96), 679 So.2d 973, 977, writ denied, 96-2314 (La.02/21/97), 688 So.2d 521, the court stated:
La.R.S. 15:540 was enacted to insure completeness. Succession of Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138 (La.1987). halts intent is that the state, in offering a defendant’s statement, may not mislead the jury as to its true meaning by selecting and excluding parts. State v. Haynes, 291 So.2d 771, citing State v. Smith, 144 La. 801, 81 So. 320 (1919). Thus, the state can not edit a confession to make it more inculpatory. State v. Loyd, 455 So.2d 687 (La.App. 2d Cir.1984), writ denied, 461 So.2d 313 (La.1984).
Defendant has not alleged that there are any omissions or inaccuracies in the transcript, nor has he indicated how the jury was misled by having copies of his statement while they watched the videotape.
Defendant further argues that it was error for the court to allow the jurors to keep the transcripts through a recess and part of the testimony of a witness. According to defendant, this was a violation of La.C.Cr.P. art. 793.
As noted by the court in State v. Howard, 626 So.2d 459 (La.App. 3d Cir. 1993), article 793 addresses the use of evidence in the jury room. In pertinent part, La.C.Cr.P. art. 793(A) provides:
Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
The jurisprudence relied upon by defendant in support of this argument is inapplicable as these cases all involve a jury’s access to written evidence after the jury has retired to deliberate.[2] As noted above, La.C.Cr.P. art. 793 is inapplicable and, inasmuch as defendant has shown no prejudice, we |13cannot say that the trial court erred in refusing to grant a mistrial. These assignments of error are without merit.

Refusal to Admit into Evidence Letters Written by Gretchen

According to defendant, it was improper for the trial court to rule that the letters written by Gretchen to him while he was in jail awaiting trial were inadmissible on the basis of relevancy. Defendant further argues that, in ruling on this issue, the court made an improper comment on the evidence in front of the jury.
After the state rested, the defense sought to introduce into evidence several letters written by Gretchen to defendant. The following exchange occurred:
*828 Mr. Kidd: Judge, we offer D-5 through D-13, the letters previously identified by Miss Gretchen Hamilton as being written to her (sic) to Matt Nighten-gale.
Mr. Caldwell: Objection, Your Honor. There’s no foundation been laid for these. If counsel wants to get these into evidence he’s gotta call a witness to identify the — these exhibits.
They’re not independently introducea-ble (sic) into evidence. He questioned the witness on a couple of points on ‘em, and that’s it. Now these — and it’s improper to introduce those into evidence.
The Court: All right. Court will — will
Mr. Kidd: It goes to the weight and not to the admissibility. They’ve been properly identified by Miss Wilson (sic). She said she
The Court: Court — the Court finds that they have been identified, but I have not had sufficient relevance pointed out to this point. It may be at some later time through other witnesses, but at this time the Court will not admit 5 through 13.
| uMr. Kidd: Judge, then we ask that they be included as a proffer.
The Court: They may.
Mr. Caldwell: There’s no such thing as a proffer in a criminal case, Your Honor. And so the State would object.
Mr. Kidd: There — there most certainly is a proffer.
The Court: Well, the Court will allow them to be put in the Clerk’s record, whether it’s called a proffer or not, so that somebody else can review 'em at a later time.
La.C.Cr.P. art. 841 provides that, in order to preserve the right to seek appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. Defense counsel did not make a contemporaneous objection setting forth the reasons for his objection. We find, however, that his proffer of the letters could easily be interpreted as such an objection.
Defendant’s counsel cross-examined Gretchen concerning the letters. She identified the letters as those she had written to defendant. The letters offered encouragement (“keep your head up,” “look to the Lord for strength” and “believe in yourself and know it’s gonna be alright”) and expressed her love for defendant. In response to an objection by the state to the cross-examination, defense counsel told the trial court that his purpose was “that what I think is coded suggest that exchange (sic) for her extending him love, that he would keep his mouth shut about her. That’s precisely where I’m going ...” Defense counsel did not ask Gretchen about any particular passage or language in the letters. His sole question was, “[I]s the 11scoding having to do with you extending your love to Matt Nightengale in exchange for the testimony you desire from him?” Her answer was no.[3]
This was an inadequate foundation for offering the letters to impeach Gretchen’s testimony. Although the trial court stated that the letters were not relevant, the letters were not admissible because at that point a proper foundation had not been laid. The correct procedure would have been to ask the witness whether a particular passage was written by her and *829 whether it was “in code.” La.C.E. art. 613.
Also for the first time on appeal, defendant argues that the court’s response, excerpted above, was a comment on the evidence. La.C.Cr.P. art. 772 prohibits the judge from commenting upon the facts of the case by giving an opinion as to what has been proved, not proved or refuted. The purpose of this article is to insure that the jury is in fact the judge of the law and the facts on the question of guilt or innocence of the defendant. State v. Hodgeson, 305 So.2d 421 (La.1974).
Article 772 is not applicable to the trial judge’s reasons for ruling on objections relating to the admission or exclusion of evidence, provided the judge’s remarks are not unfair or prejudicial to defendant. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Williams, 397 So.2d 1287 (La.1981); State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied, 456 So.2d 171 (La.1984). The remarks of the trial judge to the effect that relevancy had not yet been shown appear to be a permissible explanatory comment in support of his ruling. Furthermore, the comment did not appear to prejudice defendant. This assignment of error lacks merit.

Conclusion

For the reasons set forth above, defendant’s conviction and sentence are affirmed.
APPLICATION FOR REHEARING
Before BROWN, STEWART, PEATROSS, KOSTELKA, and DREW, JJ.
Rehearing denied.

. While defendant was indicted for first degree murder, with no objection from the defense, the indictment was amended to reflect a charge of second degree murder.

. See State v. Adams, 550 So.2d 595 (La.1989); State v. Passman, 345 So.2d 874 (La.1977); State v. Freetime, 303 So.2d 487 (La.1974); State v. Gracia, 527 So.2d 488 (La.App. 5th Cir.1988); State v. Gongre, 503 So.2d 785 (La.App. 3d Cir. 1987); State v. Hailes, 501 So.2d 788 (La.App. 4th Cir.1986).

. We note that in one letter, Gretchen stated, "Everything I hear on the radio reminds me of you. It’s just little things! But I know you are going to f— me. That’s in you though, you don't have love for me anyway." However, defense counsel neither referred to this passage in his cross-examination nor brought it up with the court.