590 So.2d 1266 (1991)
STATE of Louisiana
v.
Bob E. LEWIS.
No. 90 KA 1641.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
Iberville Indigent Def., Plaquemine, for defendant.
Allen J. Myles, Asst. Dist. Atty., Plaquemine, for the State.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Bob E. Lewis (defendant) was charged with distribution of marijuana, LSA-R.S. 40:966(A). He pled not guilty and, after a jury trial, was found guilty as charged. Defendant was sentenced to eight years at hard labor. He has appealed, urging seven assignments of error.
Defendant was arrested in connection with an undercover drug surveillance operation. On December 9, 1989, Iberville Parish Sheriff's Officer James Gales was working undercover and wearing a hidden wire used to tape-record conversations. Before he went to the Hop-N-Shop, where the surveillance began, Detectives Edward Engolio and Howard Marionneaux, utilizing standard procedure, searched Gales to make sure there was no contraband in his possession. The detectives gave Gales money to purchase drugs and then dropped him off at the Hop-N-Shop. He met Benny Joe Carringone there and talked to him briefly. Defendant, who Gales knew as Carringone's brother-in-law, approached and joined the conversation. Engolio and Marionneaux could see and hear the men during this conversation. Carringone asked Gales if he needed a "30." During the trial, testimony indicated this phrase *1267 referred to a pack of marijuana. Defendant told Gales he could probably get marijuana for him. He asked for a quarter and went to make a phone call while Carringone and Gales continued to talk. Carringone reassured Gales that his brother-in-law [defendant] would not take his money and then fail to return with the drugs. Defendant returned and stated he needed the money for the marijuana and would return in about ten minutes. A short time later, Gales left the Hop-N-Shop to look for defendant. He found him in the parking lot of the parish courthouse, where defendant gave Gales the marijuana. Although the conversation was still being taped, Engolio and Marionneaux could no longer see the men.
At the trial, Carringone testified that his girlfriend was defendant's sister, but he denied referring to defendant as his brother-in-law. Carringone stated that defendant was a casual friend. Carringone further testified that, although it was possible he could have been seen having a conversation with defendant at the Hop-N-Shop, he did not recall seeing Gales there. During his testimony defendant denied seeing Gales at the Hop-N-Shop parking lot on December 9, 1989, but stated he could have seen Carringone.

EVIDENCE IN DELIBERATION ROOM
Defendant contends that the trial court improperly granted a jury request and allowed the jury during its deliberation to listen to the taped conversation between Gales and defendant. During the trial defendant objected to the granting of this request[1] and, following the trial, filed a motion for new trial based upon the same grounds as the objection.
Louisiana Code of Criminal Procedure article 793 provides:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
The Louisiana Supreme Court has recognized that jurors may, during deliberations, inspect physical evidence in order to arrive at a verdict but cannot inspect written evidence to assess its verbal contents. State v. Perkins, 423 So.2d 1103, 1109 (La 1982); State v. Freetime, 303 So.2d 487, 489 (La.1974). The general rule, as expressed by Louisiana Code of Criminal Procedure article 793, is that a jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. For example, a jury may examine a written statement to ascertain or compare a signature, or to see or feel it with regard to its actual existence. State v. Johnson, 541 So.2d 818, 824 (La.1989); State v. Perkins, 423 So.2d at 1109-1110.
The legislature has made an express choice in this instance of denying access to written evidence during the deliberations, except for the sole purpose of physical examination. This court must follow the explicit prohibition of article 793. As stated by the Louisiana Supreme Court in State v. Freetime, 303 So.2d at 488-89:
The policy choice thus represented is to require jurors to rely on their own memory as to verbal testimony, without notes and without reference to written evidence, such as to depositions or transcribed *1268 testimony. The general reason for the prohibition is a fear that the jurors might give undue weight to the limited portion of the verbal testimony thus brought into the room with them....
Furthermore, the Louisiana Supreme Court has interpreted article 793 to absolutely prohibit the repetition of testimony to the jury.[2]State v. Adams, 550 So.2d 595, 598-99 (La.1989); State v. Johnson, 438 So.2d 1091, 1102 (La.1983); State v. Perkins, 423 So.2d at 1109-1110. Moreover, that court has found reversible error for violations of the rule expressed in article 793. See, e.g., Adams, 550 So.2d 595 (reversible error for trial court to permit jury to view the tapes and transcript of defendant's confession during its deliberations); Perkins, 423 So.2d 1103 (trial court committed reversible error by allowing jury to view a copy of defendant's statement in the jury room); and Freetime, 303 So.2d 487 (conviction reversed where trial court allowed jury to review defendant's confession during deliberations).
The jury was permitted during its deliberations to have a tape recorder and tape of the conversation between the undercover officer and defendant recorded the night of the offense. The colloquy between the court and jury is significant:
THE COURT: Do you have a request?
FOREPERSON: Yes, we would like the tape.
THE COURT: Give them the tape and [the] recorder.
We can see no difference between this circumstance and allowing a jury to view a transcript of a defendant's statement or confession or a transcript of a witness's testimony. Obviously, the jury was allowed to do more than make a physical examination of the tape when the jury was also given a tape recorder with the tape. Thus, for the above reasons, we conclude that the trial court committed reversible error when it permitted the jury to have the tape and a tape recorder during its deliberations.
For these reasons, we reverse defendant's conviction and sentence and remand this case for a new trial.
CONVICTION AND SENTENCE REVERSED AND REMANDED.
NOTES
[1] The transcript shows that defendant objected after the court had given the jury the tape and recorder and it had retired to deliberate further. In his brief, defense counsel states:

The State, in the instant case, contends that no timely objection was made by defense counsel. This is not true. Defense counsel purposely did not object in the presence of the jury because this would tend to convey a message to the jury that the defense counsel was trying to hide something by not allowing them to hear the tape. However, as soon as the jurors left the room, the objection was made on the record and it is submitted that such objection was timely made.
[2] However, the parties may knowingly and voluntarily agree to waive the statutory provisions of La.C.Cr.P. art. 793 if such agreement is in clear express language and reflected in the record. State v. Adams, 550 So.2d 595, 599 (La.1989). No waiver of defendant's rights under article 793 was made in this case.