I,MIRIAM G. WALTZER, Judge.
STATEMENT OF THE CASE
Ernestine Sellers and Michael S. Parker were charged by Bill of Information filed 12 July 2000 with distribution of cocaine, a violation of LSA-R.S. 40:967(A)(1). The record contains a minute entry of 17 July 2000 bearing Sellers’ name and case number, but relating to the arraignment of co-defendant Parker. On 14 November 2000, Sellers appeared with counsel, motions were marked satisfied. On 16 November 2000 Sellers appeared with her attorney at pre-trial of the instant offense and for resisting an officer. On 5 February 2001 Sellers appeared with her counsel. The minute entry reflects that there was no plea agreement, and that the matter had previously been set for trial on 6 February 2001. On 6 February 2001, on motion by the State, the case was continued to 6 March 2001. On 1 March 2001, on motion of Sellers’ counsel, the trial was continued to 3 April 2001. On 2 April 2001 the matter was called. The court heard a defense motion to continue and granted a continuance to 1 May 2001. On 3 April 2001, on motion of defense counsel, the trial was continued to 1 May 2001.
The matter was tried to a twelve-person jury on 1 and 2 May 2001. The jury returned a verdict of guilty of attempted distribution of cocaine. Ten jurors agreed |2to the verdict; two jurors voted “not guilty.” The trial court made the verdict the judgment of the court and ordered a pre-sentence investigation, setting sentencing for 19 July 2001. On 19 July 2001 the court sentenced Sellers to serve fifteen (15) years at hard labor, five years of which would be without benefit of pardon, probation or parole.
Sellers appeals from her conviction and sentence. We affirm the conviction and amend the sentence.
STATEMENT OF FACTS
In February 2000, Kevin Randall Barrios began working as a paid undercover informant for the Plaquemines Parish Sheriffs Office. Barrios conducted operations under the supervision of Narcotics Agents Ty Wiltz and Chuck Adams. Prior to each operation, the agents would install a video camera in Barrios’ car and a radio transmitter on his person. The agents would monitor Barrios’ attempts to purchase narcotics from the nearest practical location while remaining out of sight. Apparently, in this instance, an area in the southern portion of the parish identified as the Sunrise area was targeted. On 24 February 2000, Barrios was successful in purchasing three rocks of cocaine from the defendant. At trial, the videotape from that day’s operation was played for the jury while Barrios gave an account of the events as they transpired. From these two sources the facts can be gleaned.
After having been flagged down, Barrios proceeded down a private lane. Barrios can be heard saying, “Tell Ernestine to pull up a little,” as well as “Tell her to bring me sixty.” Barrios then drives further down the lane. Soon thereafter, a subject stands at the window of the vehicle and Barrios counts out sixty dollars. 1 aBarrios asks, “Are you going to get that from Ernestine?” He then tells the subject that he needed “three” from Ernestine, whereupon the subject departs from view. At this point Ernestine requests that Barrios exit the vehicle, but he refuses, explaining that he had money in his car that he did not want to leave unattended.
*234 Barrios then explained that Ernestine accused him of being the police, and he is heard explaining that the police officer at his home was his parole officer. Barrios also explained that Ernestine requested that he not call her by her name, and he is then heard referring to her as “Boo.” A subject then entered Barrios car. Barrios explained that the subject inquired if he wanted him to get the cocaine, and Barrios is heard saying “Go get it David, from Ernestine.” Barrios is heard saying, “Thank you Boo, alright sweetie.” The subject then gets back in the car and apparently transfers the drugs to Barrios. Barrios testified that the subject retrieved the drugs from the defendant. Barrios then backs up, and drops the subject off, and returns to the highway. As Barrios was exiting the lane he was upset over being accused of being the police.
The video camera was located in the back seat of Barrios’ car, and the images captured essentially show the back of his head and people who come up to the window. At no point can the defendant be seen on the tape. The faint sound of a women’s voice can also be heard, although it is mostly unintelligible. Following the transaction, Barrios identified the defendant from a photographic lineup.
James W. Bridges, evidence custodian for the Plaquemines Parish Sheriffs Office, testified to the chain of custody of the cocaine.
PREVIEW FOR ERRORS PATENT
A review of the record reveals an error patent in the defendant’s sentencing. The trial court sentenced defendant to serve fifteen years at hard labor, with the first five years to be served without benefit of probation, parole or suspension of sentence on his conviction for attempted distribution of cocaine. However, La. R.S. 40:967 and La. R.S. 14:27 require that only the first two and one-half years of the sentence be served without benefit of probation, parole or suspension of sentence. Therefore, the defendant’s sentence is amended to provide that only the first two and one-half years of the sentence is to be served without benefit of probation, parole or suspension of sentence.
ASSIGNMENT OF ERROR: The evidence was insufficient to support the conviction.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132, 1134. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La.1992).
pWhen issues are raised on appeal both as to sufficiency of evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 978.
Initially, defendant contends that Mr. Barrios lacked sufficient credibility for a *235 rational juror to conclude that defendant was guilty of the crime. Defendant notes that under cross examination it was revealed that in a prior proceeding Barrios had failed to admit that he had been convicted of attempted possession of ecstasy. However, Barrios explained that because he had received a pardon for that offense he believed that he was not obligated to discuss it. He explained that he had been informed that it would not be used against him. In the same proceeding, Barrios also failed to offer the fact that he also been convicted of theft.
Defendant also notes that during cross-examination Barrios denied having made a case against Demond Williams in an unrelated matter. Barrios was then confronted with a report he had prepared in relation to the Williams case. Barrios explained that he had not recalled that case. It was noted that while working undercover, Barrios made 152 cases.
Defendant further contends that because defendant is not seen on the videotape and that because the assisting narcotics agents did not observe for themselves the alleged transaction, the evidence was insufficient.
Defendant’s contentions regarding the credibility of the witness and the lack of corroborative evidence are insufficient to warrant reversal. In assessing the sufficiency of the evidence this court is not called upon to decide whether it | fibelieves the witnesses or whether the conviction is contrary to the weight of the evidence. Viewed in a light most favorable to the state, the evidence was sufficient to convince a reasonable juror beyond a reasonable doubt that the defendant committed attempted distribution of cocaine.
This assignment of error is without merit.
ASSIGNMENT OF ERROR: The trial court committed reversible error when it allowed the jury to view the videotape during deliberations.
The record reflects that while the jurors were deliberating they sent a note to the trial judge requesting to view the videotape. The trial court heard arguments and over defense objection allowed the jury to view the tape in the jury room. Subsequently, the jury requested a battery or power cable, as the camcorder was not operating. The court granted this request as well.
The controlling version of La.C.Cr.Pro. art. 793 provided:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
The general rule as expressed by C.Cr. Pro. 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue that does not require the examination of the verbal contents of the document. State v. Perkins, 423 So.2d 1103, 1109-1110 (La.1982). The prohibition against repeating testimony to the jury is reflected in jurisprudence applicable in this state since the earliest times and was first codified |7by Article 395 the Louisiana Code of Criminal Procedure of 1928. State v. Freetime, 303 So.2d 487 (La.1974). In Freetime, our Supreme Court explained the rationale of the article as follows:
*236 The policy choice thus represented [by art. 793] is to require jurors to rely on their own memory as to verbal testimony, without notes and without reference to written evidence, such as to depositions or transcribed testimony. The general reason for the prohibition is a fear that the jurors might give undue weight to the limited portion of the verbal testimony thus brought into the room with them. However, such prohibition is contrary to the growing trend to permit discretion in the trial court, in the absence of a statutory prohibition, to accede to jury requests to see exhibits and writings (except depositions).
The court has also noted that Article 793 presumes that the jury will give undue weight to any written exhibit that it examines for its verbal contents during deliberations. State v. Johnson, 541 So.2d 818, 825 (La.1989).
In State v. Freetime, a divided court reversed the conviction after the jury was allowed to review a transcribed confession by the defendant, and in State v. Perkins, supra, he court reversed defendant’s conviction after the jury was allowed to review a written statement made by the defendant which the court characterized as in-culpatory. In both instances the court reversed the conviction on the basis that an explicit prohibition had been violated.
More recently, in State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, the court considered the circumstance where the jury requested and was allowed to view a surveillance video from a convenience store during death penalty deliberations. The tape depicted the defendant shooting the victim in the chest during a robbery. The tape did not contain audio. At trial the defendant objected, ^arguing that allowing the jury to view the tape was the same was having testimony repeated during deliberations.
Our Supreme Court found otherwise, stating:
A videotape, which is like a photograph, is neither testimony nor written evidence and is not excluded by La. C.Cr.P. Art. 793. A photograph is a reproduction of a physical object or scene. It is not “written” evidence of “testimony” within the meaning of La. C.Cr.P. Art. 793, which prohibits the use of written material during deliberations. Hence, a jury’s request to see a videotape after it retired to deliberate on the penalty phase is not an abuse of the court’s statutory discretion. See State v. Overton, 337 So.2d 1058 (La.1976).
Id., 92-1623 at 23, 637 at 1025.
The court’s conclusion that the videotape in Davis was neither testimony nor written evidence is elemental. Black’s Law Dictionary defines “testimony” as follows:
Evidence given by a competent witness under oath or affirmation; as distinguished from evidence derived from writings, and other sources. Testimony is a particular kind of evidence that comes to the tribunal through live witnesses speaking under oath or affirmation in presence of tribunal, judicial or quasi-judicial. State v. Rici [Ricci], 107 R.I. 582, 268 A.2d 692, 697.
In common parlance, “testimony” and “evidence” are synonymous. Testimony properly means only such evidence as is delivered by a witness on the trial of a cause, either orally or in the form of affidavits or depositions.
Recently, in State v. Brooks, 00-953 (La.App. 5 Cir. 1/30/01) 777 So.2d 643, the Fifth Circuit Court of Appeal reversed a conviction involving a nearly identical situation as present here. This court declines to adopt the Fifth Circuit’s reasoning.
Rln Brooks, undercover detectives were able to videotape a series of drug transac *237 tions involving the defendant. Upon request, the trial court permitted the jury to view the tapes in the jury room during their deliberations. The court reversed the conviction, relying principally on State v. Broussard, 598 So.2d 1302 (La.App. 3 Cir.1992). As in Brooks, the Broussard jury was allowed to review during deliberation a videotape of a drug transaction between a confidential informant and the defendant. Quoting Broussard, the Brooks court reiterated:
Our Louisiana Supreme Court has made it abundantly clear that allowing a jury to review evidence or testimony such as audiotapes or transcripts during deliberations is reversible error because of the possibility that jurors might give undue weight to that limited portion of the oral testimony adduced at trial. (Citations omitted). Brooks, 00-953 at p. 7, 777 So.2d at 647, citing, Broussard, 598 So.2d at 1303.
The only case cited by the Third Circuit in support of the proposition that jurors are prohibited from reviewing audio tapes is State v. Adams, 550 So.2d 595 (La.1989). However, in Adams the jurors were provided with the defendant’s written confession as well as an audio recording of the confession. Accordingly, we do not read Adams as authority for the proposition that article 793 prohibits the introduction of audiotapes in light of the fact that the article says nothing concerning an audio recording.
The Brooks court distinguished State v. Davis on the basis that the videotape did not contain audio. The court also noted that at the conclusion of each of the drug transactions the officer related a physical description of the defendant. Furthermore, it is apparent that the court was troubled by the fact that the jury was allowed to view the tape at their leisure in the courtroom in the presence of persons |inother than the jury as many times as they pleased. State v. Brooks, 00-953 at p. 8, 777 So.2d at 648.
The fact that the tape in Brooks contained audio led the Fifth Circuit to conclude that allowing the jury to view and listen to the tapes during deliberations was the same as having testimony repeated to the jury. Id., 00-953 at p. 9, 777 So.2d 643. We do not agree. Certainly, testimony and an audio recording are similar by virtue of the shared verbal component. However, the two are by no means synonymous. The principal evil which article 793 seeks to avoid is that the transcribed testimony of a witness who does not appear in court will be given undue influence by virtue of the fact that it can be reviewed in a way in which verbal testimony cannot, thereby according the testimony undue influence. While jurors could review the testimony of an out of court witness verbatim, they could only draw on their memories for facts adduced by those witnesses who testified in court, thereby overemphasizing such testimony in preference to other testimony in the record. State v. McCully, 310 So.2d 833, 835 (La.1975).
An audio recording, or a video tape recording which captures audio as well, simply cannot be considered testimony within the meaning of the statute. The statements captured are not under oath, they are not the product of questioning by a member of the bar, and in this instance they are not a recollection of events past. Such a tape recording is a record of events as they occurred, and, as in the normal course of human events, the spoken word is an integral facet of the events recorded.
Accordingly, we do not consider an audiotape or a videotape that contains audio in the same vein as oral testimony adduced at trial. See, Broussard, 598 So.2d at 1303.
*238 [^One commentator has made the following observations regarding the issue of transcripts and recordings being allowed in the jury room:
Quite sensibly, courts have had some reluctance to permit the jury to take with it documents of a testimonial character, lest they “act as a speaking, continuous witness * * * to the exclusion of the totality of the evidence taken at trial which must be viewed in its entirety. This concern applies to transcripts of testimony (whether given at a deposition or at trial), and to charts, reports, or other displays which highlight or sum up the case or testimony, and are prepared and offered by a party.
But there is no rule of exclusion for tangible exhibits with verbal content. Nontestimonial exhibits with such content, such as * * * recordings of criminal acts which are verbal in nature, are generally allowed to go into the deliberations. Indeed, it would be highly peculiar to withhold such things from the jury’s scrutiny, and somewhat inconsistent with the whole philosophy underlying the Best Evidence Rule.
3 Louisell and Mueller, Federal Evidence (1979) 682-684, § 390.
It should be noted that as in Brooks, the videotape in question contains portions of what could be classified as narration on the part of the undercover informant. He can be heard declaring his location for the benefit of the officers monitoring the situation. Furthermore, Barrios states initially after being flagged down, “My girl Ernestine is looking for me.” He says, “She’s in the lane over there, I’m going to go in the lane.” As Barrios maneuvers the car he explains that he is going south and that he is going to get another “sixty” from Ernestine and that he is going to get her to come to his side. During the progress of the operation, Barrios can also be heard stating, “Ernestine is coming back to the car. She’s in the back right now” and that “Ernestine is coming this way.” He is also heard saying, hi>“She wants me to get out and come to the car.” After Barrios leaves the lane he can be heard saying that he got “sixty” from Ernestine through David.
In a certain sense, these portions of the tape can be seen as testimonial in nature, as they are not truly a record of events as they transpired, but the witness’s observations of the events as they transpired. Although we cannot agree that allowing the jury to review the tape was the same as having testimony repeated to them, to the extent that this narrative portion of the tape is testimonial in nature, the trial court’s having allowed the jury to review it during deliberations constitutes a violation of art. 793. Therefore, we will review the trial court’s decision to allow the jury to view the tape during their deliberations as error.
In as much as the article prohibits jury re-examination of trial evidence, State v. McCully, 310 So.2d at 835, by its declaration that a juror must rely upon his memory in reaching a verdict or that viewing the tape is inconsistent with a physical examination thereof, it is incumbent on us to review as error the submission of the tape to the jury during deliberation.
Because the perceived error in both Brooks and Broussard was deemed a violation of an express prohibition, the convictions in those cases were reversed without the court’s having conducted a harmless error analysis. However, our Supreme Court has rejected such an approach. In State v. [Silas] Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, the court concluded that the proper scope for appellate review was provided by the mandatory language of La.C.Cr.Pro. art. 921; that is, a judgment or ruling shall not be reversed *239 due to error unless the error affects substantial rights of the accused. 94-1379, at p. 17, 664 So.2d at 101. In [Silas] Johnson, the court considered whether harmless error analysis may be used to review a conviction where inadmissible other crimes evidence was disclosed to hgthe jury. 94-1379, at p. 12, 664 So.2d at 100. The court rejected both the mandatory terms of La. C.Cr.Pro. art. 770 and the per se rule that such a violation was a prejudicial and substantial denial of the defendant’s statutory rights and held that the error should be reviewed within the framework of the federal test for harmless error announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
In State v. [Charles] Johnson, 97-1519 (La.App. 4 Cir. 1/27/99), 726 So.2d 1126, this court previously concluded that a violation of article 793 should be reviewed under harmless error analysis. The court was persuaded by dicta in State v. [Saul] Johnson, 541 So.2d 818 (La.1989), and by the refinement of statutory error analysis in the case of Silas Johnson that such an error might not require reversal.
Accordingly, it is our duty as reviewing court to determine whether the error was harmless beyond a reasonable doubt. Chapman, 386 U.S. at 24, 87 S.Ct. at 828. The error may not be declared harmless if there is a reasonable possibility that the error contributed to the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993).
The principal evil or danger that La.C.Cr.Pro. art. 793 seeks to avoid is that the testimony or written evidence in question will be given undue weight. However, that danger is not present under the circumstances of this case. Implicit in a consideration of undue influence is the concern that the testimony or written evidence will be accorded greater weight than other evidence presented in the course of the trial. In the instant case, the testimony of Barrios and the tape were the only evidence introduced to demonstrate defendant’s guilt. Furthermore, as the defendant does not appear on the tape, whether she actually distributed the drug, or 114was even present, rested on the testimony of Barrios, not on the tape. Furthermore, as an independent account of the events, the tape’s probative value clearly outweighed the potential prejudice from its viewing by the jury.
Certain portions of the audio are not readily intelligible upon first impression. Indeed, it was necessary for us to review certain portions of the tape more than once in order to fully comprehend its content. During the trial, the jurors could not ask to review any potion of the tape, and as the trier of fact their search for the truth would only have benefited by an independent assessment of the contents of the tape. Multiple viewings of the tape, with the opportunity to stop and replay unclear sections, allow the viewer to sift through the events as they occurred and to comprehend fully what actually was said.
Accordingly, we find that although the trial court may have committed error in having allowed the jury to view and hear the tape during its deliberations, the error was harmless beyond a reasonable doubt.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction, and amend the sentence to provide that two and one-half years thereof shall be served without benefit of probation, parole or suspension of sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED.