# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1253

**STATE OF LOUISIANA**

**VERSUS**

**R.W.W.**

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 05-141
HONORABLE PEYTON CUNNINGHAM, JR., DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**CONVICTIONS CONDITIONALLY AFFIRMED; REMANDED FOR EVIDENTIARY HEARING.**

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, LA   70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
	**R.W.W.**

**Renee W. Dugas**
**Assistant District Attorney**
**Post Office Box 309**
**Colfax, LA   71417**
**(318) 627-2971**
**COUNSEL FOR APPELLEE:**
	**State of Louisiana**

AMY, Judge.

The defendant appeals his convictions for one count of aggravated rape, in violation of La.R.S. 14:42, and two counts of sexual battery, in violation of La.R.S. 14:43.1. For the following reasons, we conditionally affirm and remand for an evidentiary hearing.

## Factual and Procedural Background

The record shows that on November 22, 2004, L.P.[1] and B.W., the victims, spoke with Detective Lorraine Lacour, a juvenile detective with the Grant Parish Sheriff's Office, concerning allegations of sexual abuse allegedly perpetrated by the defendant, R.W.W. Detective Lacour stated that after speaking with L.P. and B.W., she scheduled appointments for them to see a doctor, which they did. She testified that she then sent the girls to "the Rapides Children's Advocacy Center so they [could] be interviewed by a forensic interviewer and be put on tape and video and audio taped."

According to Detective Lacour's testimony, later on that day, M.S. arrived at her office also alleging that the defendant sexually abused her. Detective Lacour stated that because M.S. had been previously examined by a doctor, she did not request that M.S. see another doctor. Like she did with B.W. and L.P., Detective Lacour made an appointment for M.S. to be interviewed at the Rapides Children's Advocacy Center (Advocacy Center). Detective Lacour stated that she watched the interviews from another room and that they were consistent with the previous statements that the girls had given. However, according to Detective LaCour, a few months after making the initial complaint, L.P. denied that the defendant sexually abused her.

---

[1] Pursuant to La.R.S. 46:1844, the initials of the parties involved have been used throughout.

With regard to the sexual abuse of B.W. and M.S., the defendant was subsequently arrested and charged by bill of indictment with two counts of sexual battery in violation of La.R.S. 14:43.1. He pled not guilty to the amended charges of two counts of sexual battery and one count of aggravated rape, a violation of La.R.S. 14:42(A)(4). Following a jury trial, the defendant was found guilty as charged and sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence for the aggravated rape conviction. For each count of sexual battery, the defendant was sentenced to ten years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant was given credit for time served. He subsequently filed a motion for post-verdict judgment of acquittal or, alternatively, for a new trial, which the trial court denied. The defendant now appeals, asserting the following assignments of error:

[1.]    The evidence is constitutionally insufficient to sustain a conviction.

[2.]    The court erred in allowing the jury to view documentary evidence in the form of transcripts of alleged child victim statements after the jury had retired to deliberate.

[3.]    The court erred in denying the defendant's motion for a new trial and other alternatives without a contradictory hearing.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

2

*Sufficiency of the Evidence*

The defendant argues that the "evidence presented at trial was insufficient to legally support [his] convictions by the jury verdict of one count of aggravated rape and two counts of sexual battery[.]"

With regard to sufficiency claims, this court stated in *State v. Freeman,* 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

Aggravated Rape and Sexual Battery of B.W.

The defendant asserts that "the testimony of B[.]W[.] was not supported by any physical evidence and the circumstances give rise to reasonable doubt." In particular, the defendant points out that B.W.'s cousin, K.W., testified that B.W. admitted to him that the allegations against the defendant were false.

Louisiana Revised Statutes 14:42 provides in pertinent part:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (4) When the victim is under the age of thirteen years.

3

Louisiana Revised Statutes 14:43.1 states:

    A. Sexual Battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:

    (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or

    (2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.

The record indicates that the defendant and C.W. were married for several years and had a daughter, B.W., in March 1992. After the dissolution of the marriage, B.W. and her brother visited the defendant on weekends at the home he shared with his girlfriend, S.P., and her children, L.P.[2] and J.P. She stated that although she slept in L.P.'s room, they slept in separate beds. According to B.W.'s testimony, the defendant entered L.P.'s bedroom while she and L.P. were asleep. B.W. stated that she asked the defendant, "Why are you in here?" B.W. testified that the defendant did not answer, but instead he "put his hands down my shirt and my pants" and touched "[m]y boobs and down below." When asked if she had a name for the area she was referring to, B.W. answered, her "cat[.]"[3] B.W. testified that the defendant put his finger inside of her and "[h]e would push it in and out." She further testified that the defendant touched her "cat" with his mouth and tongue. Additionally, B.W. testified that the defendant would "make [her] suck his thing[,]" which she said was his

---

[2] We note that S.P. is the mother of L.P., the minor who recanted her statement about the defendant sexually abusing her.

[3] The record reflects that at trial, B.W. was shown a picture of a girl's body. When asked to show what part of her body the defendant touched, she drew a circle around the vagina, which was labeled "cat."

"private spot." He also made her touch it. She stated that she asked the defendant to stop, but he refused.

Upon further questioning, B.W. recalled an incident where she and the defendant were alone in the kitchen one morning and he "would call me over to him and I would sit on his lap and, then he would start touching my boob." She asked him to stop, but he did not. B.W. explained that she was afraid to tell anyone about the defendant touching her because the defendant said "he would get back at me if I told anybody."

B.W. stated that once her mother learned of the abuse, she took her to see a "regular doctor." She told him what happened, but he did not examine her. She saw another doctor before seeing Dr. Nakhlawi, the doctor she was referred to by Detective Lacour. According to Detective Lacour, Dr. Nakhlawi concluded that "[t]here was no physical evidence . . . of sexual penetration." However, she explained that "the children never alleged to me that they were sexually penetrated, only fondled. Fondling means with the hand, okay, or some other object. The children told me with the hand and the mouth, so naturally there would not be any other signs of . . . you know, of penetration."

During his case, the defendant called B.W.'s cousin, K.W., to the stand. K.W. testified that B.W. stayed with his family the week before Christmas. He further testified that he, his sister, B.W., and B.W.'s brother were in his room when B.W. told him that the allegations against the defendant were not true. According to K.W., B.W. told him that "she wanted to tell the truth but she couldn't because she didn't want everybody to hate her, to get mad at her."

5

After reviewing the record, we conclude that there is sufficient evidence to support the defendant's conviction for aggravated rape of B.W. B.W. testified that the defendant engaged in oral sex with her. The record indicates that she was twelve years old at the time. Additionally, the elements of sexual battery were met insofar as B.W. testified that the defendant touched her vagina and breasts and forced her to touch his penis. Again, B.W. had not yet attained the age of fifteen and was at least three years younger than the defendant. *See* La.R.S. 14:43.1.

We note that the testimony of the victim alone is sufficient to prove the elements of sexual offenses despite the lack of physical evidence. *State v. J.M.*, 06-624 (La.App. 3 Cir. 11/2/06), 941 So.2d 686. Although the defendant may point to the physical examination that did not reveal physical evidence, recall that the jury was aware of the extent of the contact between the defendant and B.W. and was free to conclude that this lack of physical evidence was consistent with that type of contact. Furthermore, B.W.'s interview at the Advocacy Center, which was entered into evidence, and her trial testimony were virtually identical.

Finally, the jury was free to give little weight to K.W.'s testimony. It heard his mother testify that K.W. told her that "he would do whatever it took" to get the defendant out of jail. Therefore, we find that in viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of aggravated rape and sexual battery proven beyond a reasonable doubt.

This assignment is without merit.

6

Sexual Battery of M.S.

In his brief, the defendant argues that "[i]n the absence of any physical evidence and no corroboration, M[.]S[.]'s claims made in response to prompts and leading questions by her grandmother . . . must be questioned."

After reviewing the record, we find that the evidence supports the defendant's conviction for sexual battery of M.S. The record shows that M.S. was born in October 1998 and is the niece of the defendant's girlfriend, S.P. According to J.S., M.S.'s grandmother, M.S. lived with S.P. until she got full custody of M.S. in January 2004. J.S. stated that after she obtained full custody of M.S., M.S. would spend every other weekend at S.P.'s house while she worked as a registered nurse. J.S. testified that in November 2004, she received a call from S.P. informing her that the defendant may have behaved inappropriately with M.S. J.S. explained how she broached the subject with the then six-year old child: "I fixed her some popcorn and we sat down in the living room and I told her that we needed to talk, that mamaw needed the truth, that I needed to hear from her what [R.W.W.] had did." According to J.S., M.S. stated that the defendant "pulled her up in the bed with [S.P.] in the bed asleep and put his hands in her panties and rubbed her tutu real hard." When asked what her "tutu" was, J.S. replied, "her private area." J.S. testified that she took M.S. to the doctor the next day and that he examined M.S. She then went to the Grant Parish Sheriff's Office and met with Detective Lacour, who scheduled M.S. for an interview at the Advocacy Center.

At trial, M.S.'s interview from the Advocacy Center was entered into evidence. M.S. testified that when she slept at S.P.'s house, she would either sleep on a pallet in S.P.'s room or on a couch in the living room. She recalled one incident where she

7

was in the defendant's bedroom that he shared with S.P. According to M.S., S.P. was asleep. She testified that when she climbed into the bed, the defendant touched her with his fingers. M.S. was asked to circle on a picture of a girl's body, where the defendant touched her. According to the picture, which was entered into evidence, she circled her vagina.

M.S. testified that she did not tell anyone about the incident until J.S. asked her, "has anybody touched you where you didn't like it?" She stated that she did not know why she did not tell anyone before. M.S. maintained that no one helped her remember what happened or told her what to say.

After reviewing this evidence, we find that a rational trier of fact could have found the defendant guilty of sexual battery. Louisiana Revised Statutes 14:43.1 requires that the defendant touch the genitals of a victim who is less than fifteen years old and at least three years younger than the defendant. Here, the record indicates that M.S. was six years old when the defendant, an adult, touched her vagina with his fingers. Furthermore, her testimony was consistent with what she disclosed to J.S. as well as her interview at the Advocacy Center. Accordingly, we find that a rational trier of fact could have found the essential elements of sexual battery proven beyond a reasonable doubt.

Therefore, this assignment is without merit.

*Evidence During Deliberations*

In his second assignment of error, the defendant argues that the trial court violated La.Code Crim.P. art. 793 when it allowed the jury to examine, during deliberations, transcripts of the victims' interviews. According to the defendant, this is reversible error in that the "jurors were able to give undue weight to information from the Child Advocacy Center instead of sworn testimony at trial."

8

According to the defendant's brief, when the trial court stated that the jury could read the transcripts in the courtroom, he objected, and the trial court retrieved the transcripts from the jury in open court. However, the State asserts, in brief, that "the transcripts were being passed out in the courtroom when counsel for the State as well as counsel for the defendant approached the bench" to determine whether the jury could review the transcripts during deliberations. According to the State, no agreement could be reached and "both the State and defense request[ed that] the transcripts be retrieved." The State maintained that "the jurors did not have the transcripts in their possession long enough to have given them undue weight. Before all [the] jurors receiv[ed] a copy of the transcript[s,] they were retrieved by the court and returned to the bailiff."

The record is unclear on this aspect of the proceeding insofar as it does not reveal whether all of the jurors received the transcripts, how long they had them, and whether they were permitted to leave the courtroom with them. The timing of the defendant's objection in this course of events is also unclear. According to the record, after the jury retired to deliberate, they made two requests:

> BY THE COURT: I have a note from the jury. "Can we have the 3 transcripts from the videos." The answer is yes, you may, but you have to stay in here and read the transcript[s]. You cannot take them in the jury room. Why, I do not know, but that's what the law is. Next question is "Can we have the definitions of all the verdicts?" I can read those to you again if you want me to, but you can't take them in the jury room. Why I don't know, but that's the way it is.
>
> BY JUROR: Okay.
>
> BY THE COURT: Would you like for me to read them again? Aggravated rape or force . . .
>
> BY JUROR: Can you explain not so wordy? I mean you read it was kind of long.
>
> BY THE COURT: What part of it did you want me to explain?

BY JUROR: Well just the definitions of each one.

BY THE COURT: Okay.  Let's see what I can do.

BY MS. DUGAS [Assistant District Attorney]: Your Honor, may we approach.

(BENCH CONFERENCE - ON RECORD)

BY MS. DUGAS: They want you to explain the charges . . .

BY MR. WAMPLER [Defense Counsel]: I think you can charge them again but I don't think you can engage in a dialogue about the charge, can you?

BY MR. WHITE [Assistant District Attorney]: I think you can recharge them with that, that charge.

BY MS. DUGAS: It was that language they're saying that . . .

BY MR. WAMPLER:  She asked me to make it, she asked to make it simpler and help explain it and he can't do, he can't . . . he can read the charges . . .

BY THE COURT: Would you mind explaining to me how I'm going to find out what they want if I don't talk to them?

BY MR. WAMPLER: Well, I think you can talk to them but I don't think you can do what she just asked you to do, Judge.

BY THE COURT: You mean read the . . .

BY MR. WAMPLER: No.  You can read it, certainly . . .

BY THE COURT: Uh-huh.

BY MR. WAMPLER: . . . but she said, I thought, can you explain it to us in a not so wordy fashion.

BY THE COURT: Well, if you've got an objection put it on record.  Let's get on with this thing.

BY MR. WHITE: And to not let them take this in the jury . . .

(BENCH CONFERENCE CONCLUDED)

. . . .

BY THE COURT: Okay.  You want to know the definition of forcible rape?

10

BY JUROR: Yes.

BY JUROR:  Yes, sir, please.

BY THE COURT: Okay.  Forcible rape is . . . .  Yes, sir.

BY THE FOREMAN OF THE JURY (MR. VALLERY): Uh …Your Honor I have been elected for -- to be the foreman.

BY THE COURT: Yes, sir.

BY FOREMAN VALLERY: Can we return to our, return to our jury room . . . deliberation room[?]  I think we can, can work this out.

BY THE COURT: Certainly.

BY FOREMAN VALLERY: Thank you.

BY THE COURT: Certainly.  Any thing else? Okay.  Would you mark this as the questions that the juror propounded to the court after they started deliberating.

(JURY EXITS COURTROOM - RETURNS TO DELIBERATE)

(JURY RETURNS TO COURTROOM)

BY MR WHITE:  Well let's put that on record.

BY MR. WAMPLER:  Wait a minute[,] let me see something.  No.  I do object.

BY MR. WHITE: Do you have any objections . . .

BY MR. WAMPLER: Yeah.

BY MR. WHITE:  . . . I mean right here.  Do you care if they do it here?  You want to [sic] them from them.  Your honor, we, we . . . I don't think there is going to be an agreement.  We need to (Inaudible) the evidence.

BY MR. WAMPLER: I, I'm not . . . you may overrule me but the statute says that they are not to be given . . .

BY THE COURT: All right.  Ladies and gentlemen of the jury the . . . it's been brought to my attention that it would not be appropriate [for] you to read that.  I'll have to take those transcripts back and you have to go back to the jury room and rely on your memories.

(JURY RETURNS TO DELIBERATE)

11

The lack of clarity in the record is crucial in two respects. First, La.Code Crim.P. art. 793 requires a timely objection. Next, if preserved, this court must be able to review the trial court's actions in light of La.Code Crim.P. art. 793, which provides in pertinent part:

> A. Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

"The general reason for the prohibition is a fear that jurors might give undue weight to the limited portion of the verbal testimony thus brought into the room with them." *State v. Savoy*, 05-92, p. 9 (La.App. 3 Cir. 11/2/05), 916 So.2d 339, 344 (*quoting State v. Adams*, 550 So.2d 595, 599 (La.1989) and *State v. Freetime*, 303 So.2d 487, 488-89 (La.1974) *aff'd after remand*, 334 So.2d 207 (La.1976)). *See State v. Gongre*, 503 So.2d 785 (La.App. 3 Cir. 1987) (wherein this court found Article 793 violated when the trial court allowed the jury to review the transcript of the defendant's oral statement for the purpose of examining its contents) and *State v. Perkins*, 423 So.2d 1103 (La.1982) (wherein the supreme court reversed the defendant's conviction and remanded the case for a new trial because the trial court allowed the jury to review the defendant's written statement after retiring for deliberations).

We remand the case to the trial court to address the deficiencies in the record, *i.e.*, to conduct an evidentiary hearing to determine whether the jury reviewed the transcripts of the victims' interviews during deliberations and whether the defendant timely objected to any alleged error. *See State v. Nanlal*, 97-0786 (La. 9/26/97), 701 So.2d 963 (wherein the supreme court remanded the case for an evidentiary hearing

to determine whether the defendant validly waived his right to trial by jury) and *State v. Rodriguez*, 97-501 (La.App. 5 Cir. 11/25/97), 703 So.2d 803, *writ denied*, 98-0449 (La. 6/26/98), 719 So.2d 1055 (wherein the fifth circuit remanded the case for an evidentiary hearing on a motion for new trial after the defendant alleged that the trial erred in not allowing into evidence during the motion for new trial hearing, the testimony of a juror regarding alleged communications with the bailiff). If the trial court determines that the defendant timely objected and finds a sufficient Article 793 violation, it shall grant a new trial. If the ruling is adverse to the defendant, his right to appeal that ruling is preserved.

*Motion for New Trial*

Finally, the defendant contends that the trial court "erred in denying [his] motion for a new trial and other alternatives without a contradictory hearing" in accordance with La.Code Crim.P. art. 852.[4] In his motion for new trial, the defendant alleged that "[t]he verdict is contrary to the law and the evidence" and that '[t]he jury was allowed to utilize written evidence during deliberations in violation of the provisions [of La.Code Crim.P. art. 793]."

These matters have been addressed in the previous assignments of error.

**DECREE**

For the above reasons, the defendant's convictions are conditionally affirmed on the evidence in the record on appeal. However, the case is remanded to the trial court for an evidentiary hearing to determine whether the jury reviewed the transcripts of the victims' interviews during deliberations and whether the defendant preserved this issue for review by timely objecting. If the trial court finds the

---

[4] Louisiana Code of Criminal Procedure Article 852 states that: "A motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney."

question preserved and a sufficient La.Code Crim.P. art. 793 violation, the trial court must set aside the convictions and sentences and grant the defendant a new trial. The defendant may appeal from any adverse ruling on this issue, and in the absence of such appeal, this court affirms the defendant's convictions.

**CONVICTIONS CONDITIONALLY AFFIRMED; REMANDED FOR EVIDENTIARY HEARING.**